**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**ERIE DIVISION**

| | |
|---|---|
| NEWPARK MATS & INTEGRATED SERVICES LLC,<br><br>Plaintiff<br><br>v.<br><br>CHECKERS INDUSTRIAL PRODUCTS, LLC, d/b/a CHECKERS SAFETY GROUP,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.: _____17-142 Erie_____

JURY TRIAL DEMANDED

## COMPLAINT FOR PATENT INFRINGEMENT

1.      Plaintiff, Newpark Mats & Integrated Services LLC ("Newpark" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant Checkers Industrial Products, LLC, d/b/a Checkers Safety Group ("Checkers" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

2.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, from Defendant's infringement of Newpark's United States Patent No. 6,511,257 ("the '257 Patent") and United States Patent No. 6,695,527 ("the '527 Patent") (collectively "the Asserted Patents").

3.      Plaintiff seeks injunctive relief as well as damages.

## PARTIES

4.      Plaintiff Newpark Mats & Integrated Services LLC is a limited liability company

organized under the laws of the state of Texas with a principal place of business at 9320 Lakeside Blvd., Suite 100, The Woodlands, TX 77381.

5.      Defendant Checkers Industrial Products, LLC is a limited liability company organized under the laws of the state of Colorado with a principal place of business at 620 Compton Street, Broomfield, CO 80020.  Defendant may be served with process by serving its registered agent, The Corporation Company, 7700 E. Arapahoe Rd. Ste. 220, Centennial, CO 80112-1268.

6.      Defendant also has a place of business at 701 E. Spring Street, Titusville, PA 16354.

7.      Defendant manufactures, imports, offers for sale, and/or sells mats to customers, resellers, and distributors throughout the United States, including in this District.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq*.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

10.      This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the Commonwealth of Pennsylvania and this judicial district, either directly or through agents, including at Defendant's manufacturing plant in Titusville, Pennsylvania.

11.      On information and belief, Defendant has committed acts of infringement by making and/or importing TuffTrak XT™ ("Accused Products") and similar products in the Commonwealth of Pennsylvania and in this judicial district.

12.      Defendant has also committed acts of infringement by selling and offering to sell

the Accused Products to customers and by inducing acts of infringement by others in the Commonwealth of Pennsylvania and in this judicial district.

13.     As a result, Defendant has intentionally availed itself of the privilege of conducting business in this Commonwealth and District, has purposefully directed activity at this Commonwealth and District, and has established sufficient minimum contacts with this Commonwealth and District such that Defendant can reasonably and fairly anticipate being haled into this Court.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District and has a regular and established place of business in this District.

## NEWPARK'S HIGH PERFORMANCE MATS

15.     Newpark is a pioneer in the matting products and matting systems industry. Many customers, retailers, distributors, and industrial organizations in the oil & gas, utilities, pipeline, general construction, military, heavy haul, entertainment & film, sports arena and facility management require the durability and longevity of matting products and matting systems for site access or temporary surfaces.

16.     Durability and longevity for matting products and matting systems are essential within such industries: for example, durable mats provide access to drill sites through temporary roads in a wide variety of terrains and environmental conditions; reliable, rugged mat products are required for tank and helicopter landing and maintenance pads; and safe mat products are vital for creating equipotential zones in utility and power transmission applications.

17.     Newpark has expended tremendous resources researching and developing mats, including the Dura-Base® line of matting and matting systems, including Dura-Base® Advanced

Composite Mat System™, Dura-Base® EPZ Grounding System™, and Dura-Base® Defender™ to address the durability and longevity challenges required for a wide variety of working platforms for work sites and access roads.

18.    As a result of Newpark's field-proven, reliable mats and matting systems and innovative features, Newpark's mats and matting systems have become the top choice for industrial organizations seeking to improve worker safety while providing access to extreme environments.

19.    Newpark's investment in research and development directed toward innovative matting systems is reflected in and protected by a portfolio of patents, which includes the patents asserted here.

### CHECKERS' INFRINGING ACTIVITIES

20.    Defendant Checkers has entered the matting products and matting system market, and specifically, the industrial matting products and matting system market.

21.    Rather than develop its own technology, Defendant copied Newpark's patented technology, and has incorporated Newpark's patented technology into its matting systems and products.  Defendant unfairly competes with Newpark in the marketplace by manufacturing, importing, offering for sale and selling these infringing products throughout the United States, in Pennsylvania, and in this District.

22.    Defendant sells and offers for sale its infringing products throughout the United States and in this District.  In particular, Defendant advertises on its website that it maintains a regional area manager for territory including Pennsylvania, who can be contacted by current and prospective customers in this District for sales in this District.

23.    Defendant unfairly competes with Newpark in the marketplace by selling and offering for sale the infringing products to customers throughout the United States and in this District, including to Newpark's own customers and potential customers.  For example, in March 2017, Newpark participated in a Vendor Selection Meeting for United Rentals, quoting its Dura-Base® mats.  Defendant competed against Newpark for the United Rentals' business, quoting the accused TuffTrak XT™ mats.  Defendant was awarded the United Rentals' bid.  Defendant thus unfairly competed with Newpark using Newpark's own patented technology.

24.    On information and belief, Defendant has also committed acts of infringement by manufacturing the Accused Products at its Titusville, Pennsylvania manufacturing facility located in the Commonwealth of Pennsylvania and in this District.

25.    On information and belief, Defendant has also committed acts of infringement by importing the Accused Products into the Commonwealth of Pennsylvania and this District.

26.    Defendant maintains a list of distributors on its website.

27.    Defendant knows and intends that distributors sell the Accused Products to customers to use for projects that need matting solutions.

28.    Through its infringing activities, Defendant has caused direct injury to Newpark throughout the United States and in this District.

## THE ASSERTED PATENTS

29.    On January 28, 2003, the United States Patent and Trademark Office ("USPTO") duly and lawfully issues the '257 Patent, entitled "Interlocking Mat System for Construction of Load Supporting Surfaces."  The disclosure of the '257 Patent relates to, among other things, a reusable mat system with interlocking features and traction characteristics.  A copy of the '257 Patent is provided as Ex. A.

30.     Newpark is the assignee and owner of the right, title and interest in and to the '257 Patent, including the right to assert all causes of action arising under the '257 Patent and the right to remedies for infringement thereof, including past damages.

31.     On February 24, 2004, the USPTO duly and lawfully issued the '527 Patent, entitled "Interlocking Mat System for Construction of Load Supporting Surfaces."  The disclosure of the '527 Patent relates to, among other things, a reusable mat system with interlocking features and traction characteristics.  A copy of the '527 Patent is provided as Ex. B.

32.     Newpark is the assignee and owner of the right, title and interest in and to the '527 Patent, including the right to assert all causes of action arising under the '527 Patent and the right to remedies for infringement thereof, including past damages.

## ACCUSED PRODUCTS

33.     Defendant makes, sells, and offers for sale within the United States, and imports into the United States, a variety of mats and matting systems.

34.     One matting system that Defendant makes, sells, and offers for sale within the United States, and/or imports into the United States is the TuffTrak XT™ matting system.

35.     The Accused Products infringe at least claims 1 and 3 of the '257 Patent, and at least claims 1, 4, 5, 7, and 8 of the '527 Patent.

36.     Below is a top-view image of the TuffTrak XT™:



## COUNT ONE – INFRINGEMENT OF THE '257 PATENT

37.     Paragraphs 1 to 36 are reincorporated herein by reference as if fully set forth herein.

38.     Claim 1 of the '257 Patent is directed to a load supporting structure comprising:

a.     a first generally rectangular panel having a top, a bottom and cellular structure between said top and bottom, wherein said cellular structure comprises a plurality of substantially vertical walls which define a plurality of hollow cells, and wherein a skin covers one face of said cells and defines a substantially continuous surface on the bottom of said first panel;

b.     a second generally rectangular panel having a top, a bottom and cellular structure between said top and bottom, wherein said cellular structure comprises a plurality of substantially vertical walls which define a plurality of hollow cells, and wherein a skin covers one face of said cells and defines a substantially continuous surface on the top of said second panel, said first and second panels being affixed and offset relative to one another such that said first panel forms a lower peripheral extension along two adjacent sides of said structure, said second panel forms an upper peripheral extension along the remaining two sides of said structure and said substantially vertical walls of said first panel are aligned with said substantially vertical walls of said second panel; and

c.     a plurality of raised elements extending from the bottom of said first panel, and from the top of said second panel, wherein said raised elements are situated proximate to and in general alignment with said vertical walls defining internal cellular structure.

39.     Below is an annotated, exploded view of the TuffTrak XT™ showing various components thereof:



40.     The Accused Products include "a first generally rectangular panel having a top, a bottom and cellular structure between said top and bottom, wherein said cellular structure comprises a plurality of substantially vertical walls which define a plurality of hollow cells, and wherein a skin covers one face of said cells and defines a substantially continuous surface on the bottom of said first panel."

41.     The Accused Products include "a second generally rectangular panel having a top, a bottom and cellular structure between said top and bottom, wherein said cellular structure comprises a plurality of substantially vertical walls which define a plurality of hollow cells, and wherein a skin covers one face of said cells and defines a substantially continuous surface on the top of said second panel, said first and second panels being affixed and offset relative to one another such that said first panel forms a lower peripheral extension along two adjacent sides of said structure, said second panel forms an upper peripheral extension along the remaining two sides of said structure and said substantially vertical walls of said first panel are aligned with said substantially vertical walls of said second panel."

42.     The Accused Products include "a plurality of raised elements extending from the bottom of said first panel, and from the top of said second panel, wherein said raised elements are situated proximate to and in general alignment with said vertical walls defining internal cellular structure."

43.     Claim 3 of the '257 Patent is directed to a load supporting structure comprising:

a.     a first generally rectangular panel having a top, a bottom and an area of cellular structure between said top and bottom, wherein said cellular structure is formed by a plurality of substantially vertical walls which define a plurality of hollow cells, and wherein a first skin is disposed along the bottom of said cells to define a substantially continuous surface on the bottom of said first panel;

b.     a second generally rectangular panel having a top, a bottom and an area of cellular structure between said top and bottom, wherein said cellular structure is formed by a plurality of substantially vertical walls which define a plurality of hollow cells, and

wherein a second skin is disposed along the top of said cells to define a substantially continuous surface on the top of said second panel; and

      c.    a plurality of raised elements extending from the lower surface of said first panel and the upper surface of said second panel, wherein said raised elements extending from the lower surface of said first panel are situated proximate to and in general alignment with the vertical walls of said first panel, and said raised elements extending from the upper surface of said second panel are situated proximate to and in general alignment with the vertical walls of said second panel; and

      d.    means for affixing the top of said first panel to the bottom of said second panel, wherein said panels are offset relative to one another such that said first panel forms a lower peripheral extension along two adjacent sides of said structure and said second panel forms an upper peripheral extension along the remaining two sides of said structure, and the substantially vertical walls of said first panel are aligned with said substantially vertical walls of said second panel.

44.    Below is an annotated, exploded view of the TuffTrak XT$^{\text{TM}}$ showing various components thereof:



45.    The Accused Products include "a first generally rectangular panel having a top, a bottom and an area of cellular structure between said top and bottom, wherein said cellular structure is formed by a plurality of substantially vertical walls which define a plurality of hollow cells, and wherein a first skin is disposed along the bottom of said cells to define a substantially continuous surface on the bottom of said first panel."

46.    The Accused Products include "a second generally rectangular panel having a top, a bottom and an area of cellular structure between said top and bottom, wherein said cellular structure is formed by a plurality of substantially vertical walls which define a plurality of

hollow cells, and wherein a second skin is disposed along the top of said cells to define a substantially continuous surface on the top of said second panel."

47.     The Accused Products include "a plurality of raised elements extending from the lower surface of said first panel and the upper surface of said second panel, wherein said raised elements extending from the lower surface of said first panel are situated proximate to and in general alignment with the vertical walls of said first panel, and said raised elements extending from the upper surface of said second panel are situated proximate to and in general alignment with the vertical walls of said second panel."

48.     The Accused Products include "means for affixing the top of said first panel to the bottom of said second panel, wherein said panels are offset relative to one another such that said first panel forms a lower peripheral extension along two adjacent sides of said structure and said second panel forms an upper peripheral extension along the remaining two sides of said structure, and the substantially vertical walls of said first panel are aligned with said substantially vertical walls of said second panel."

49.     Accordingly, Defendant directly infringes and indirectly infringes at least claims 1 and 3 of the '257 Patent.

50.     Defendant directly and indirectly infringes the '257 Patent, literally and under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, *et seq*., by selling, offering to sell, making, using, and importing products that infringe at least claims 1 and 3 of the '257 Patent, without permission or authority from Newpark.

51.     Defendant directly infringes at least claims 1 and 3 of the '257 Patent by making, using, offering for sale, selling and/or importing the Accused Products and any similar products, without authority in or into the United States, and will continue to do so unless enjoined by this

Court or the patent expires, whichever is sooner.  As a direct and proximate result of Defendant's direct infringement of the '257 Patent, Newpark has been and continues to be damaged.

52.    Defendant indirectly infringes at least claims 1 and 3 of the '257 Patent by knowingly and actively inducing its customers to infringe, and by intentionally aiding, assisting and encouraging its customers to directly infringe the patent through their manufacture, offer for sale and sale of the Accused Products by, among other things, providing the Accused Products to users, customers, and distributors thereof with instructions on how to use the Accused Products.

53.    Defendant intended to induce direct patent infringement by customers of the Accused Products.  *See, e.g.*, *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can, be proven by direct evidence.").  The intent required for induced infringement may be proven using circumstantial evidence.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). With knowledge of the '257 Patent, Defendant performed the acts that constitute induced infringement and have induced direct infringement.  Defendant engaged in such inducement having knowledge of the '257 Patent.  Furthermore, Defendant knew or should have known that its actions would induce direct infringement by the users of the Accused Products, and intended that its actions would induce direct infringement by such users.  As a direct and proximate result of Defendant's indirect infringement by inducement of the '257 Patent, Newpark has been and continues to be damaged.

54.    By engaging in the conduct described herein, Defendant has injured Newpark and is thus liable for infringement of the '257 Patent, pursuant to 35 U.S.C. § 271.

55.    Defendant has committed these acts of infringement without license or authorization.

56.     Defendant has committed these acts of infringement with knowledge of the '257 Patent and thus has acted recklessly and willfully with regard to Newpark's rights in the '257 Patent.

57.     As a result of Defendant's willful infringement of the '257 Patent, Newpark has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's infringement.

58.     Defendant has willfully infringed the '257 Patent, entitling Newpark to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

59.     Newpark will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court or the patent expires, whichever is sooner.  As such, Newpark is entitled to compensation for any continuing and future infringement up until the date that Defendant is finally and permanently enjoined from further infringement or the patent expires, whichever is sooner.

## COUNT TWO – INFRINGEMENT OF THE '527 PATENT

60.     Paragraphs 1 to 59 are reincorporated herein by reference as if fully set forth herein.

61.     Claim 1 of the '527 Patent is directed to a load supporting structure comprising:

a.     a first generally rectangular panel having a top, a bottom, a plurality of substantially vertical walls extending between said top and bottom which define a plurality of hollow cells, and a substantially solid lip along two adjacent sides of said panel, wherein a skin is disposed along the bottom of said substantially vertical walls to define a substantially continuous surface on the bottom of said first panel;

b.      a second generally rectangular panel having a top, a bottom, a plurality of substantially vertical walls extending between said top and bottom which define a plurality of hollow cells, and a substantially solid lip along two adjacent sides of said panel, wherein a skin is disposed along the top of said substantially vertical walls to define a substantially continuous surface on the top of said second panel;

c.      a plurality of raised elements extending from the lower surface of said first panel, wherein said raised elements are proximate to and in general alignment with the vertical walls of said first panel;

d.      a plurality of raised elements extending from the upper surface of said second panel, wherein said raised elements are proximate to and in general alignment with the vertical walls of said second panel; and

e.      means for affixing the top of said first panel to the bottom of said second panel, wherein said panels are offset relative to one another such that said substantially solid lip of said first panel forms a lower peripheral extension along two adjacent sides, and said substantially solid lip of said second panel forms an upper peripheral extension along the remaining two sides, and the substantially vertical walls of said first panel are aligned with said substantially vertical walls of said second panel.

62.     Below is an annotated, exploded view of the TuffTrak XT$^{TM}$ showing various components thereof:



63.     The Accused Products include "a first generally rectangular panel having a top, a bottom, a plurality of substantially vertical walls extending between said top and bottom which define a plurality of hollow cells, and a substantially solid lip along two adjacent sides of said panel, wherein a skin is disposed along the bottom of said substantially vertical walls to define a substantially continuous surface on the bottom of said first panel."

64.     The Accused Products include "a second generally rectangular panel having a top, a bottom, a plurality of substantially vertical walls extending between said top and bottom which define a plurality of hollow cells, and a substantially solid lip along two adjacent sides of said

panel, wherein a skin is disposed along the top of said substantially vertical walls to define a substantially continuous surface on the top of said second panel."

65.    The Accused Products include "a plurality of raised elements extending from the lower surface of said first panel, wherein said raised elements are proximate to and in general alignment with the vertical walls of said first panel."

66.    The Accused Products include "a plurality of raised elements extending from the upper surface of said second panel, wherein said raised elements are proximate to and in general alignment with the vertical walls of said second panel."

67.    The Accused Products include "means for affixing the top of said first panel to the bottom of said second panel, wherein said panels are offset relative to one another such that said substantially solid lip of said first panel forms a lower peripheral extension along two adjacent sides, and said substantially solid lip of said second panel forms an upper peripheral extension along the remaining two sides, and the substantially vertical walls of said first panel are aligned with said substantially vertical walls of said second panel."

68.    Claims 4, 5, 7, and 8 of the '527 Patent depend from claim 1.

    a.    Claim 4 recites "[t]he load supporting structure recited in claim 1, wherein said first and second panels are welded along the seam formed between said first and second panels."

    b.    Claim 5 recites "[t]he load supporting structure recited in claim 1, further comprising a traction promoting material on the bottom of said first panel and the top of said second panel."

    c.    Claim 7 recites "[t]he load supporting structure recited in claim 1, further comprising means for dissipating static electricity."

     d.     Claim 8 recites "[t]he load supporting structure recited in claim 1, further comprising a plurality of bores extending through said substantially solid lip of said first panel and said substantially solid lip of said second panel."

69.     Below is an annotated, exploded view of the TuffTrak XT<sup>TM</sup> showing various components thereof, and a product description from Defendant's website:



70.     The Accused Products include "[t]he load supporting structure recited in claim 1, wherein said first and second panels are welded along the seam formed between said first and second panels," as recited by claim 4.

71.     The Accused Products include "[t]he load supporting structure recited in claim 1, further comprising a traction promoting material on the bottom of said first panel and the top of said second panel," as recited by claim 5.

72.     The Accused Products include "[t]he load supporting structure recited in claim 1, further comprising means for dissipating static electricity," as recited by claim 7, through the description of TuffTrak XT<sup>TM</sup> on Defendant's website.

73.    The Accused Products include "[t]he load supporting structure recited in claim 1, further comprising a plurality of bores extending through said substantially solid lip of said first panel and said substantially solid lip of said second panel," as recited by claim 8.

74.    Accordingly, Defendant directly infringes and indirectly infringes at least claim 1 of the '527 Patent.  Defendant also directly infringes and indirectly infringes at least claims 4, 5, 7, and 8 of the '527 Patent.

75.    Defendant directly and indirectly infringes the '527 Patent, literally and under the doctrine of equivalents, as proscribed by 35 U.S.C. § 271, *et seq*., by selling, offering to sell, making, using, and importing products that infringe at least claims 1, 4, 5, 7, and 8 of the '527 Patent, without permission or authority from Newpark.

76.    Defendant directly infringes at least claims 1, 4, 5, 7, and 8 of the '527 Patent by making, using, offering for sale, selling and/or importing the Accused Products and any similar products, without authority in or into the United States, and will continue to do so unless enjoined by this Court or the patent expires, whichever is sooner.  As a direct and proximate result of Defendant's direct infringement of the '527 Patent, Newpark has been and continues to be damaged.

77.    Defendant indirectly infringes at least claims 1, 4, 5, 7, and 8 of the '527 Patent by knowingly and actively inducing their customers to infringe, and by intentionally aiding, assisting and encouraging their customers to directly infringe the patent through their manufacture, offer for sale and sale of the Accused Products by, among other things, providing the Accused Products to users, customers, and distributors thereof with instructions on how to use the Accused Products.

78.    Defendant intended to induce direct patent infringement by customers of the

Accused Products.  *See, e.g.*, *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can, be proven by direct evidence.").  The intent required for induced infringement may be proven using circumstantial evidence.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). With knowledge of the '527 Patent, Defendant performed the acts that constitute induced infringement and have induced direct infringement.  Defendant engaged and hence forward will continue to engage in such inducement having knowledge of the '527 Patent.  Furthermore, Defendant knew or should have known that its actions would and will continue to induce direct infringement by the users of the Accused Products or similar products, and intended that its actions would induce direct infringement by such users.  As a direct and proximate result of Defendant's indirect infringement by inducement of the '527 Patent, Newpark has been and continues to be damaged.

79.    By engaging in the conduct described herein, Defendant has injured Newpark and is thus liable for infringement of the '527 Patent, pursuant to 35 U.S.C. § 271.

80.    Defendant has committed these acts of infringement without license or authorization.

81.    Defendant has committed these acts of infringement with knowledge of the '527 Patent and thus has acted recklessly and willfully with regard to Newpark's rights in the '527 Patent.

82.    As a result of Defendant's willful infringement of the '527 Patent, Newpark has suffered monetary damages and is entitled to a monetary judgment in an amount at least adequate to compensate for Defendant's infringement.

83.     Defendant has willfully infringed the '527 Patent, entitling Newpark to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

84.     Newpark will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court or the patent expires, whichever is sooner.  As such, Newpark is entitled to compensation for any continuing and future infringement up until the date that Defendant is finally and permanently enjoined from further infringement or the patent expires, whichever is sooner.

## PRAYER FOR RELIEF

WHEREFORE, Newpark prays for the following relief:

A.     That Defendant be adjudged to have infringed one or more claims of the Asserted Patents;

B.     That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly and indirectly infringing the Asserted Patents;

C.     An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Newpark for Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement or the patents expire;

D.     An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

- 21 -

E.      That Defendant be directed to pay enhanced damages under 35 U.S.C. § 284 and

Newpark's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C.

§ 285; and

F.      That Newpark have such other and further relief as this Court may deem just and

proper.

### **DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Newpark demands a

trial by jury of any and all causes of action so triable by right.

Dated: June 1, 2017                               Respectfully Submitted,

                                                  By: */s/ Jayme Partridge*
                                                  Jayme Partridge
                                                  State Bar No.: TX 17132060
                                                  Email: jpartridge@pattersonsheridan.com
                                                  B. Todd Patterson
                                                  State Bar No.: TX 00789537
                                                  Email: tpatterson@pattersonsheridan.com
                                                  **PATTERSON + SHERIDAN, LLP**
                                                  24 Greenway Plaza
                                                  Suite 1600
                                                  Houston, Texas 77046
                                                  Tel: (713) 623-4821
                                                  Fax: (713) 623-4846

                                                  *Attorneys for Plaintiff*
                                                  *Newpark Mats & Integrated Services LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 1, 2017, the foregoing document was served on all counsel of record, using the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure and Local Rule LCvR 5.3.


*/s/ Jayme Partridge*
Jayme Partridge